## UNITED STATES DISTRICT COURT
### MIDDLE DISTRICT OF FLORIDA
#### ORLANDO DIVISION

**CLARENCE VALENTINE VITALIS,**

**Plaintiff,**

**v.**                                                          **Case No:  6:12-cv-831-Orl-31GJK**

**COMMISSIONER OF SOCIAL SECURITY,**

**Defendant.**

_____

## REPORT AND RECOMMENDATION

Clarence Valentine Vitalis (the "Claimant"), appeals to the District Court from a final decision of the Commissioner of Social Security (the "Commissioner") denying his application for benefits.  Doc. No. 1.  Claimant argues that the Administrative Law Judge (the "ALJ") erred by: 1) failing to apply to correct legal standards to Claimant's alleged ankle impairment; and 2) failing to include any limitations from Claimant's neck impairment in the ALJ's residual functional capacity assessment (the "RFC") and in the hypothetical question to the vocational expert (the "VE").  Doc. No. 14 at 7-18.  For the reasons set forth below, it is recommended that the Commissioner's final decision be **REVERSED** and **REMANDED** for further proceedings.

I.     ANALYSIS.

   A.  Ankle Impairment.

Claimant alleges that the ALJ erred by failing to consider Claimant's alleged ankle impairment, singly or in combination, and should have ordered a consultative examination to determine the limiting effects of the impairment.  Doc. No. 14 at 7-13 (citing *Gibson v. Heckler*, 779 F.2d 619, 623 (11th Cir. 1986); *Walker v. Bowen*, 826 F.2d 996, 1001 (11th Cir. 1987)).

The Commissioner contends that the ALJ properly considered all of the relevant evidence, including the evidence related to Claimant's alleged ankle impairment, and considered the effects of Claimant's alleged impairments, singly and in combination.  Doc. No. 15 at 5, 9, 13-14.  The Commissioner maintains that the ALJ "implicitly found that [Claimant's] ankle injury was not severe."  Doc. No. 15 at 13.  The Commissioner also argues that the ALJ was not required to order a consultative examination related to Claimant's alleged ankle impairment because there was sufficient evidence in the record to support the ALJ's RFC.  Doc. No. 15 at 13.

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla — i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (*citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *accord Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

An ALJ "must consider every impairment alleged." *Gibson v. Heckler*, 779 F.2d 619, 623 (11th Cir. 1986) (internal citations). The ALJ also "must address the degree of impairment caused by the combination of physical and mental problems." *Id.* (internal quotations, and emphasis omitted). In doing so, the ALJ should "discuss whether the[ ] claimed impairments were sufficiently severe – either singularly or in combination – to create a disability." *Id.* Standing alone, conclusory statements to the effect that all impairments were considered in combination are insufficient. *Id.* *See also Walker v. Bowen*, 826 F.2d 996, 1001-02 (11th Cir. 1987) ("it is the duty of the ALJ to make specific and well-articulated findings as to the effect of

the combination of impairments and to decide whether the combined impairments cause the claimant to be disabled.") (internal quotations omitted).  In short, an ALJ's decision must demonstrate through well-articulated factual findings that the ALJ has considered each of a claimant's alleged impairments, singly and in combination, and the ALJ must address the degree of limitations, if any, caused by the combined effect of those impairments.  *Gibson*, 779 F.2d at 623; *Walker*, 826 F.2d at 1001-02.[1]

At the hearing, the Claimant testified that the main reasons for his disability are the major reconstructive surgeries on his left ankle and knee.  R. 36.  Claimant testified that he has sixteen pins in his left ankle, it has never completely recovered, and he has had problems with the left ankle ever since, which limits his ability to stand and sit due to pain.  R. 43.[2]  The record shows that the Claimant received treatment at the emergency room for left ankle pain on June 30, 2008, and diagnostic imaging revealed "extensive postsurgical changes [of the] distal tibia and fibula," but no "acute fracture or dislocation."  R. 191-94.

On September 16, 2009, Dr. Alvan Barber performed a consultative physical examination of Claimant.  R. 318-26.  Claimant complained of left shin and left knee pain unresolved from prior surgeries.  R. 318.  Physical examination of the lower extremities revealed a left medial

---

[1] Later panel decisions of the Eleventh Circuit have stated that conclusory statements by an ALJ to the effect that the combined effects of a claimant's impairments are not sufficiently severe to rise to the level of disability are sufficient to demonstrate that the ALJ considered all of a claimant's impairments singly and in combination.  *See Jones v. Department of Health and Human Services*, 941 F.2d 1529, 1533 (11th Cir. 1991) (citing *Wheeler v. Heckler*, 784 F.2d 1073, 1076 (11th Cir. 1986)); *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002) (citing *Jones*, 941 F.2d at 1533).  However, all of those cases were decided after the Eleventh Circuit's prior holding in *Gibson*, which was decided on January 10, 1986, and *Gibson* has not been explicitly overruled.  779 F.2d 619.  To the extent that *Wheeler*, *Jones*, and *Wilson* are inconsistent with *Gibson*, this Court is bound by the holding in *Gibson* under the prior panel precedent rule.  *See Cargill v. Turpin*, 120 F.3d 1366, 1386 (11th Cir. 1997) ("The law of this circuit is emphatic that only the Supreme Court or this court sitting en banc can judicially overrule a prior panel decision.") (internal quotations omitted).  *See also Jackson v. Colvin*, 2013 WL 1352051 at *4-5 (N.D. Ala. Mar. 29, 2013) (discussing *Gibson*, *Walker*, *Jones*, and *Wilson*, and finding that *Gibson* and *Walker* remain binding precedent requiring that an ALJ make well articulated factual findings as to each a claimant's alleged impairments and their combined effect).

[2] Claimant also testified that he had not received treatment on his left ankle in twelve years and although he sprained it during the relevant time period, it has not bothered him recently.  R. 36.

ankle scar, but normal muscle strength bilaterally.  R. 321.  Claimant walked with a left limp.  R. 322.  Dr. Barber's impressions included a left distal tibia/fibula fracture.  R. 322.  Dr. Barber opined that Claimant can walk, stand, and sit "for reasonable periods of time."  R. 322.

On March 15, 2010, Dr. Audrey Goodpasture provided a non-examining RFC assessment based upon a review of the medical records.  R. 359-366.  Dr. Goodpasture opined that Claimant carries a primary diagnosis of history of left ankle fracture and history of left knee surgery.  R. 359.[3]  On November 10, 2010, Claimant presented to the Bert Fish Medical Center complaining of an injury to his left ankle after stepping in a pot hole.  R. 370.  Claimant described the pain as mild, which improved with immobilization.  R. 370.  Physical examination of the left ankle revealed bone tenderness, limited range of motion, and soft tissue tenderness, but normal neurologic responses.  R. 371.  Diagnostic imaging revealed "extensive post surgical changes with deformity," but no "acute fracture or dislocation."  R. 375.

In his decision, the ALJ found, without elaboration, that the Claimant suffers from the following severe impairments: mild degenerative joint disease of the cervical spine at C5-C6; tendonitis of the right shoulder; osteopenia of the left hip; history of opiate abuse; and history of alcohol abuse.  R. 13.  The ALJ then states that "[n]either the claimant nor his counsel has suggested or alleged facts which establish the existence of an impairment, either singly or in combination, which meets or medically equals any impairment" of the Listings.  R. 13.  At no point in steps-two or three of the sequential evaluation process does the ALJ mention Claimant's alleged ankle impairment or make any specific findings related thereto.  R. 13-15.

In determining the Claimant's RFC, the ALJ discusses Claimant's testimony, stating:

---

[3] Dr. Goodpasture opined that Claimant can perform light work, standing or walking about 6 hours in an 8-workday, but was limited in his ability to push and/or pull with the lower extremities due to the ankle fracture, extensive postsurgical changes, and diffuse osteopenia.  R. 360.

> The claimant recently sprained his ankle but stated that it no longer bothers him.  The claimant testified that due to a prior injury, his left knee buckles and causes pain in his ankle and knee when he stands for too long.

R. 16.[4]  Yet, although the ALJ ultimately concludes that the Claimant's subjective statements regarding his limitations are not credible, the ALJ never mentions Claimant's testimony that the main reason he feels he is disabled is his left ankle and left knee impairments.  R. 16-18.  The ALJ does mention Claimants treatment at Bert Fish Medical Center and states that Claimant underwent diagnostic studies there, but the ALJ does not discuss the findings.  R. 17.  In short, throughout the decision, the ALJ fails to provide any specific, well-articulated findings with respect to Claimant's alleged left ankle impairment.  R. 13-18.

In *Gibson* and *Walker*, the ALJs failed to mention, discuss, or make well-articulated findings with respect to specific alleged impairments and the combined effect of those impairments.  *Gibson*, 779 F.2d at 623 (ALJ failed to make findings with respect to claimant's psoriasis, nervousness, anxiety, dizziness, and forgetfulness); *Walke*r, 826 F.2d at 1001-02 (ALJ failed to make findings with respect to claimant's arthralgias in the right knee, phlebitis in the

---

[4] The ALJ finds that Claimant retains the RFC to:

> [L]ift and/or carry 50 pounds occasionally and 25 pounds or less more frequently and can sit, stand and walk for at least six hours each in an eight-hour workday.  The claimant can occasionally push and/or pull and occasionally climb ramps and stairs but never climb ladders, ropes, or scaffolds.  The claimant can balance, kneel, crouch and crawl on an occasional basis and can frequently stoop.  He can occasionally reach overhead and has no limitations in his abilities to handle or finger objects.  The claimant must avoid all exposure to unprotected heights and to work around dangerous moving machinery.  He can perform unskilled work at the medium and light exertional levels.  The undersigned assessed the claimant with a "moderate" limitation in attention, concentration, and persistence and pace with "moderate" being defined as more than a slight limitation of function but with the ability to understand, remember and carry out simple rote and repetitive 1-2 step job tasks in a satisfactory manner.

R. 15.  Thus, the ALJ found that Claimant retains the RFC to perform a reduced range of medium level work.  R. 15, 19.

right arm, hypertension, gastrointestinal problems, or asthma).   In both cases, the Eleventh Circuit held that the ALJs' failure to do so warranted reversal.  *Id.*

The undersigned finds the facts of this case analogous to the facts in *Gibson* and *Walke*r, warranting the same result.  By failing to make specific, well-articulated findings with respect to Claimant's alleged ankle impairment, the final decision is not supported by substantial evidence, *i.e.*, providing sufficient evidence upon which a reasonable person would accept to support a conclusion.  R. 13-18.  Moreover, by arguing that the ALJ "implicitly found that [Claimant's] ankle injury was not severe," the Commissioner has tacitly acknowledged that the ALJ failed to comply with *Gibson* and *Walker*.  Doc. No. 15 at 13.   Accordingly, it is recommended that the Court reverse and remand the final decision of the Commissioner for further proceedings.[5]

## B.  Neck Impairment.

The ALJ determined that Claimant's neck impairment, *i.e.* mild degenerative joint disease of the cervical spine at C5-C6, is a severe impairment because it causes more than a minimal impact on Claimant's ability to perform basic work activities.  R. 13.  Claimant alleges that the ALJ erred by failing to include specific limitations in the RFC and hypothetical question to the VE from that severe impairment.  Doc. No. 14 at 13-16.  Because the ALJ failed to consider all of Claimant's impairments, singly and in combination, the case must be reversed and remanded.  *See* supra pp. 5-6.  On remand, after specifically considering all of Claimant's impairments and, if necessary, ordering a consultative examination of Claimant's left ankle, the

---

[5] In subparagraph I(A) of Claimant's memorandum, Claimant also argues that the ALJ failed to fully and fairly develop the record by not ordering a consultative examination to specifically address Claimant's alleged ankle impairment and resulting functional limitations, if any.  Doc. No. 14 at 9-11 (citing *Reeves v. Heckler*, 734 F.2d 519, 522 n. 1 (11th Cir. 1984)).  In *Reeves*, 734 F.2d at 522 n. 1, the Eleventh Circuit noted that the ALJ failed to order a consultative examination by an orthopedist even though one of the Commissioner's consultative physicians had recommended such an evaluation.  *Id.*  The Eleventh Circuit did not reverse on that issue, but stated that on remand the ALJ should consider the need for such an evaluation.  *Id.*  In this case, the ALJ erred by failing to make specific, well-articulated findings with respect to the ankle impairment.  *See* supra pp 5-6.  On remand, if the ALJ is unable to make such well-articulated findings supported by the available record, then the ALJ should consider the need for e a consultative examination on Claimant's left ankle.  *Reeves*, 734 F.2d at 522 n. 1.

ALJ will also reconsider the RFC. *See Gibson*, 779 F.2d at 623.  Therefore, because the ALJ will reconsider the Claimant's RFC, it is unnecessary to determine whether the ALJ also erred by failing to include limitations related to Claimant neck impairment in the RFC.  *Id*.  On remand, the ALJ should specifically consider Claimant's neck impairment and any resulting functional limitations therefrom in determining the RFC.

## II.    <u>CONCLUSION</u>.

For the reasons stated above, it is **RECOMMENDED** that the Court:

1.    **REVERSE** and **REMAND** the final decision for further proceedings; and

2.    Direct the Clerk to close the case.

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

**RECOMMENDED** in Orlando, Florida on May 29, 2013.

GREGORY J. KELLY
UNITED STATES MAGISTRATE JUDGE

The Court Requests that the Clerk
Mail or Deliver Copies of this order to:

Richard A. Culbertson
Suite E
3200 Corrine Dr
Orlando, FL 32803

John F. Rudy, III
Suite 3200
400 N Tampa St
Tampa, FL 33602

Mary Ann Sloan, Regional Chief Counsel

Dennis R. Williams, Deputy Regional Chief Counsel
Susan Kelm Story, Branch Chief
Christopher G. Harris, Assistant Regional Counsel
Office of the General Counsel, Region IV
Social Security Administration
61 Forsyth Street, S.W., Suite 20T45
Atlanta, Georgia 30303-8920

The Honorable John D. Thompson
Administrative Law Judge
c/o Office of Disability Adjudication and Review
Desoto Building #400
8880 Freedom Crossing
Jacksonville, FL 32256-1224